# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

KENYONNA BROWN )
by and through her Next Friend, )
TIFFANY BROWN, )
  )
     Plaintiff, )
  )    **Case No. 05-CV-00768-ODS**
  )
THE SCHOOL DISTRICT OF )
KANSAS CITY, MISSOURI, *et al.* )
  )
     Defendants. )

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS THE SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, AND DR. JENNIFER MALONE'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

THORNBERRY EISCHENS & BROWN, LLC
Joseph K. Eischens     MO #44706
*joe@TEBlawfirm.com*
Stephen C. Thornberry   MO #44354
*steve@TEBlawfirm.com*
Randall W. Brown     MO #43805
randy@TEBlawfirm.com
4550 Main Street, Suite 205
Kansas City, Missouri 64111
Telephone:    (816) 531-8383
Facsimile:    (816) 531-8385

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................iv

EXHIBIT LIST ..............................................................................................................vi

I.    INTRODUCTION ...................................................................................... 1

II.    MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ..................................... 2

Background Facts ...................................................................................... 2

Joseph Tyree sexually abused Kenyonna Brown in 2003 ................................................. 3

2002 complaints about Tyree's abuse of Kenyonna Brown ................................................. 3

2002 Sexual Abuse Hotline call.................................................................................. 6

Additional 2002 complaints about Tyree's sexual harassment............................................ 7
    Miller Complaint.................................................................................... 7
    Dean Complaint.................................................................................... 7
    Dalton complaints.................................................................................. 8

School District investigated 2002 complaints and determined that
Joseph Tyree should be removed from Delano School ....................................................... 9

School District allows Tyree to resume teaching duties at Delano School ....................... 10

Tyree sexually abused Kenyonna Brown again in 2003.................................................... 11

School District Discrimination and Sexual Harassment Policy.......................................... 11

School District could have transferred Tyree or separated him from Ms. Brown.............. 12

III.    PLAINTIFF'S RESPONSE TO SCHOOL DISTRICT'S AND DR. MALONE'S
STATEMENT OF ALLEGED UNCONTROVERTED FACTS ....................................... 14

IV.    STANDARD FOR SUMMARY JUDGMENT.................................................................. 20

V.    ARGUMENT........................................................................................... 21

    A.    There are Genuine Issues of Material Fact on Plaintiff's Title IX Claim............... 21

Case 4:05-cv-00768-ODS   Document 75   Filed 11/21/06   Page 2 of 51

1.      The School District Had Knowledge or Notice of Tyree's Prior Discriminatory Acts and Conduct ................................................... 22

2.      The School District's Response to Complaints of Harassment and Abuse Displayed Deliberate Indifference ............................................. 26

B.     There are Genuine Issues of Material Fact on Plaintiff's *42 U.S.C. § 1983* Claim against the School District ..................................................... 34

1.      Kenyonna Brown's constitutional rights were violated by official policy ................................................................................................... 34

2.      Kenyonna Brown's constitutional rights were violated by the School District's custom of failing to appropriately discipline/supervise/monitor Joseph Tyree ...................................................................................... 36

      a.      Existence of pattern of unconstitutional misconduct .................... 36

      b.      Deliberate indifference to unconstitutional misconduct ................ 37

      c.      Kenyonna Brown injured by acts pursuant to custom ................... 37

C.     There are Genuine Issues of Material Fact on Plaintiff's 42 U.S.C. § 1983 Claim against Dr. Malone ................................................................... 39

VI.     CONCLUSION ................................................................................................ 40

CERTIFICATE OF SERVICE ................................................................................ 42

iii

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................20

*Andrews v. Fowler,* 98 F.3d 1069 (8th Cir. 1996) ................................................................32,40

*Bostic v. Smyrna School Dist.,* 418 F.3d 355 (3rd Cir. 2005) ........................................................24

*City of Canton, Ohio v. Harris,* 489 U.S. 378(1989) ................................................................33,38

*City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) ................................................................39

*Comstock v. Consumers Markets, Inc.*, 953 F. Supp. 1096 (W.D.Mo. 1996) ..............................20

*Doe A. v. Green,* 298 F. Supp. 2d 1025 (D. Nev. 2004) ......................................................25,30,31

*Doe v. Gooden,* 214 F.3d 952 (8th Cir. 2000) ................................................................24

*Doe v. School Administrative Dist. No. 19,* 66 F. Supp. 2d 57 (D. Me. 1999) ........................26,29

*Franklin v. Gwinnett County Public Schools,* 503 U.S. 60(1992) ................................................21

*Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998) ............21,22,26,30,31,33

*Gordon v. Ottumwa Communtiy School Dist.,* 115 F. Supp. 2d 1077 (S.D. Iowa 2000) .........25,29

*Hart v. Paint Valley Local School Dist.,* 2002 WL 31951264 (S.D. Ohio 2002) ....................25,33

*Jacob v. City of Osceola, Missouri,* 2006 WL 741918(W.D. Mo.) ...............................................35

*Jane Doe A. v. Spec. Sch. Dist. of St. Louis County,* 901 F.2d 642 (8th Cir. 1990) .......................35

*Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607 (8th Cir.1999) ...................................................29

*Monell v. Dept. of Soc. Servs.,* 436 U.S. 658(1978) ................................................................34

*Morlock v. West Central Education District,* 46 F. Supp. 2d 892
(D. Minn. 1999) ...............................................................25,27,30,31,32,34,35,36

*Oviatt By and Through Waugh v. Pearce,* 954 F.2d 1470 (9th Cir. 1992) ....................................33

*Pearl v. Dobbs,* 649 F.2d 608 (8th Cir. 1981) ................................................................36

iv

*Pembaur v. City of Cincinnati,* 475 U.S. 469(1989)....................................................35

*P.H. v. School Dist. of Kansas City, Missouri,* 265 F.3d 653 (8th Cir. 2001).......22,23,24,26,29,35

*Polk County v. Dodson,* 454 U.S. 312 (1981)............................................................39

*Rogers v. City of Little Rock,* 152 F.3d 790 (8th Cir. 1998)...........................................35

*Sanchez v. Taggart,* 144 F.3d 1154 (8th Cir. 1998).......................................................32

*Shrum ex rel. Kelly v. Kluck,* 249 F.3d 73 (8th Cir. 2001) ..............................................35

*Thelma D. v. Board of Educ.,* 934 F.2d 929 (8th Cir. 1991) ............................................36

*Tilson v. Forrest City Police Dep't,* 28 F.3d 802 (8th Cir. 1994)....................................40

*Turley by Turley v. School Dist. of Kansas City, Missouri,* 713 F. Supp. 331
(W.D. Mo. 1989).............................................................................................33,36,38

*Ware v. Jackson County, Missouri,* 150 F.3d 873 (8th Cir. 1998) ............................31,38

*Zamora v. North Salem Central School Dist.,* 414 F. Supp. 2d 418 (S.D. N.Y. 2006) ................29

### Rules and Regulations

*20 U.S.C. § 1681(a)* ......................................................................................21

*42 U.S.C. §1983* ....................................................................................34,35,38

*Fed.R.Civ.P. 56©)*.........................................................................................20

*R.S.Mo. § 210.115*.........................................................................................23

v

**EXHIBIT LIST**

Exhibit 1        Portions of Jennifer Malone Deposition Transcript

Exhibit 2        Portions of Tiffany Brown Deposition Transcript

Exhibit 3        Portions of Kenyonna Brown Deposition Transcript

Exhibit 4        The School District of Kansas City, Missouri's Answer
                 to Plaintiff's Interrogatory No. 4

Exhibit 5        Malone Deposition Exhibit 20, Discrimination and Sexual
                 Harassment Policy

Exhibit 6        Walter-Mack Deposition Exhibit 33, August 2003 Memorandum
                 regarding Instances of Abuse and Neglect

Exhibit 7        August 10, 2005 Letter from Laurie Hornberger, MD

Exhibit 8        Portions of Kathy Walter-Mack Deposition Transcript

Exhibit 9        Malone Deposition Exhibits 7, July 24, 2002 Memo from JP
                 LaMothe to Dr. Biggins

Exhibit 10       Walter-Mack Deposition Exhibit 53, Memorandum from Maurice
                 Watson to Kathy Walter-Mack re: Investigation of Sexual
                 Harassment Complaints at Delano School

Exhibit 11       Malone Deposition Exhibit 11, Dr. Malone Investigative File

Exhibit 12       Malone Deposition Exhibit 8, Sexual Harassment Report Forms

Exhibit 13       Portion of Termination Hearing Transcript In the Matter of Joseph
                 C. Tyree, Closing Remarks of Maurice Watson

Exhibit 14       Malone Deposition Exhibit 10, DFS Child Abuse/Neglect
                 Investigation Summary

Exhibit 15       Malone Deposition Exhibit 6, March 15, 2002 Note regarding
                 Incident in Cafeteria

Case 4:05-cv-00768-ODS   Document 75   Filed 11/21/06   Page 6 of 51

Exhibit 16        Walter-Mack Deposition Exhibit 52, September 27, 2002 Report
                  from Tonia Gilbert to Kathy Walter-Mack

Exhibit 17        Malone Deposition Exhibit 15, October 18, 2002 Letter to Joseph
                  Tyree

Exhibit 18        Walter-Mack Deposition Exhibit 26, October 22, 2002 Letter to
                  Joseph Tyree

Exhibit 19        Malone Deposition Exhibit 18, New Directions Behavioral Health
                  Harassment Education Report for Joseph Tyree

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **KENYONNA BROWN** | ) | |
| **by and through her Next Friend,** | ) | |
| **TIFFANY BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 05-CV-00768-ODS** |
| | ) | |
| **THE SCHOOL DISTRICT OF** | ) | |
| **KANSAS CITY, MISSOURI,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS THE SCHOOL
DISTRICT OF KANSAS CITY, MISSOURI, AND DR. JENNIFER MALONE'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Kenyonna Brown, by and through her Next Friend and mother, Tiffany Brown states

the following for her Suggestions in Opposition to defendants The School District of Kansas City,

Missouri and Dr. Jennifer Malone's Motion for Summary Judgment and urges the Court to deny

defendants' Motion.

**I.      INTRODUCTION**

"It is the responsibility – it is the obligation of this school district, indeed this school
board, to protect its children, to protect the students who have been entrusted to this
district by our parents and in the case of a child like Kenyonna Brown who's
mentally retarded, who does not have the capacity to come forward to speak for
herself, to complain to a principal about what somebody is doing to her, we have an
especially serious and important obligation to protect those children because they are
most vulnerable."

*Portion of closing statement by counsel for the School District of Kansas City, Missouri and Dr.*

*Jennifer Malone, before the Kansas City, Missouri School Board at the Termination Hearing In the*

*Matter of Joseph C. Tyree, November 30, 2004.*

1

In 2003, Joseph Tyree, a teacher of mentally challenged students for the Kansas City, Missouri School District, sexually abused his student Kenyonna Brown. Less than one year before this the School District had actual knowledge that Tyree sexually abused Kenyonna Brown by repeatedly making sexual remarks to her and he sexually harassed teachers and coworkers. The attorney charged with leading the 2002 harassment investigation recommended Tyree be transferred from Kenyonna's school. Defendants admit that that nothing impeded such a transfer, that the principal charged with overseeing Tyree and Kenyonna wanted Tyree out of her school, and that the School District had transferred other teachers under similar circumstances. Nevertheless, despite these recommendations to remove Tyree from the school, Kenyonna was placed in Tyree's class for the 2003 school year, and no further steps were taken to monitor Tyree. It was during this time that Tyree sexual abused and assaulted Kenyonna in the back room of his classroom.

The Court should allow a jury to assess and analyze whether Dr. Malone and/or the School District were deliberately indifferent to the safety and welfare of Kenyonna Brown due to their failure to adequately and sufficiently act on their knowledge that Joseph Tyree sexually abused Kenyonna Brown and sexually harassed other female teachers.

## II.     MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT

**Background Facts**

1.     Defendant Joseph Tyree was an industrial technology teacher employed by the School District at Delano School during the Summer 2002, 2002-2003 school year, and Summer 2003 school sessions. *See, Plaintiff's Complaint, ¶ 6.*

2.     Delano School is a school attended by mentally challenged students. *Exh. 1, Deposition of Dr. Jennifer Malone, 11:20-21 ("All of my children are mentally challenged at my*

2

school.")

3.     Dr. Jennifer Malone is, and was at all relevant times, the Principal of Delano School. *Exh. 1, Malone Depo., 5:13-25.*

4.     Kenyonna has a learning disability, having been diagnosed as mentally retarded at a young age.  Her cognitive functioning is that of a five or six year old.  *Exh. 2, Deposition of Tiffany Brown, 63:10-19; Exh. 7, August 10, 2005 Letter from Laurie Hornberger, MD.*

5.     Kenyonna Brown was a student in Tyree's class at Delano School during the Summer 2002 school session, the 4th quarter of the Spring 2003 school session, and the Summer 2003 school session.  *Exh. 1, Malone Depo., 14:9 – 15:3.*

6.     It is the responsibility and obligation of the School District and its professional staff, including teachers, to protect the students and provide a safe learning environment for those who have been entrusted to the school district by their parents.  This obligation is heightened when the students are especially vulnerable by virtue of mental retardation, like Kenyonna Brown.  *Exh. 1, Malone Depo., 10:21 – 11:24, 15:4 – 16:9; Exh. 8, Deposition of Kathy Walter-Mack, 34:16-21, 35:14-23, 36:7-10, 36:24 – 37:4.*

**Joseph Tyree sexually abuses Kenyonna Brown in 2003**

7.     Joseph Tyree sexually abused Kenyonna more than once in 2003.  The assaults occurred at Delano School in Tyree's office in the back of his classroom when no one else was present. *Exh. 2, Tiffany Brown Depo., 96:8 – 97:21; Exh. 3, Deposition of Kenyonna Brown, 9:1-3, 9:23 – 10:9, 10:14-17, 10:21-24, 25:4-8.*

**2002 complaints about Tyree's abuse of Kenyonna Brown**

8.     In 2002, less than one year prior to Tyree sexually assaulting Kenyonna in the back of

3

his classroom, the School District had actual knowledge that Tyree sexually abused Kenyonna Brown by making sexual remarks to her.

9.     On July 25, 2002, Cynthia Kendrick, a paraprofessional employed by the School District at Delano School, reported that she heard Tyree make inappropriate comments directed at Kenyonna.  Specifically, Kendrick told Dr. Malone that Tyree "poked me in my arm and said, "You see that, that's a hooch,"" referring to Kenyonna, that he made the comments "in a loud voice," and that he "kept talking about her."  Kendrick also told Malone that Tyree told Kenyonna to "go tell your mama" that he called her a "hoochie."  Kendrick also stated that Kenyonna "didn't look too happy" about being called an inappropriate name and that Kenyonna "looked surprised." *Exh. 10, Walter-Mack Depo. Exh. 53, Memorandum from Maurice Watson to Kathy Walter-Mack re: Investigation of Sexual Harassment Complaints at Delano School, p. KCMSD 2224; Exh. 9, Malone Depo. Exh. 7, p. KCMSD 684A; Exh. 11, Malone Depo. Exh. 11, p. KCMSD 690; Exh. 1, Malone Depo., 45:13 – 46:20, 123:14 – 124:6.*

10.    Sometime after July 25, 2002 and before August 12, 2002, Kendrick told defendants' lawyers:

> She heard Tyree yelling that a student, Keyanna (*sic*) Brown, was dressed like a "hoochie."  His comments were made in the presence of students.  The student looked surprised when he made the comment.  Tyree proceeded to tell the student that she needed to tell her "mama" that he said she was dressed like a "hoochie" and that she should not dress that way.  He ordered the student to keep her legs under the desk to hide her body.  On another occasion, as the students were preparing to go on a field trip, Tyree demanded that the student stand up so that he could see what she was wearing that day.  He said to the student:  "Stand up, hooch."

*Exh. 10, Walter-Mack Depo. Exh. 53, p. KCMSD 2224.*

11.    Also on July 25, 2002, Carolyn White, a teacher who was assigned to work in the summer program at Delano School, told Dr. Malone that on July 22, 2002 she observed Tyree

4

"calling a young lady (Kenyonna Brown) a hooch, etc.," in a very loud manner. *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 685.*

12.     On July 25, 2002, Carolyn White completed a Sexual Harassment Report Form based on Tyree's conduct and behavior directed toward Kenyonna on July 22, 2002. White wrote that, "I heard him calling Keyanna *(sic)* a "hoe." He stated, "and tell your momma that you're a hoe too." He kept repeating that over and over. It made me uncomfortable." *Exh. 12, Malone Depo. Exh. 8, Ms. White Sexual Harassment Report Form, p. KCMSD 513; Exh. 1, Malone Depo., 56:19 – 61:8.*

13.     Sometime after July 25, 2002 and before August 12, 2002, defendants' counsel also interviewed Carolyn White concerning Tyree's sexually offensive comments directed at Kenyonna. Counsel reported that White told him the following:

> Ms. White did personally observe and hear Tyree calling Keyonna *(sic)* Brown a "hooch." Her recollection is that he made the comment repeatedly and in a loud voice. While the comment was directed specifically to the student, he said it in the presence of all students. Her recollection is that the incident occurred outside the cafeteria while the student was in the hall coming from a classroom. The incident occurred on or about July 22. When Tyree made the comment to the student, the student turned around, and he proceeded to challenge her to "tell your mama I'm calling you a hooch." Ms. Brown *(sic)* observed that Tyree regularly engaged in such teasing and harassing behavior.

*Exh. 10, Walter-Mack Depo. Exh. 53, pp. KCMSD 2224-2225.*

14.     On July 24, 2002, Karen Dalton reported to Dr. Malone that Ms. White and Ms. Coleman "had issues with Mr. Tyree's behavior toward a student." *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 688; Exh. 1, Malone Depo., 122:5-9.*

15.     The teachers who complained to Dr. Malone about Tyree's inappropriate sexual comments and behavior directed at Kenyonna were disgusted and disturbed by his comments. *Exh.*

5

*1, Malone Depo., 8:3-12; Exh. 8, Walter-Mack Depo., 30:16 – 31:7.[1]*

16.　　On July 25, 2002, Kenyonna told Dr. Malone about Tyree's comments directed at her. Kenyonna said that Tyree was calling her names, that he said she was a "hoochie." The School District and Dr. Malone knew that Kenyonna was embarrassed and offended by the comments. *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 691; Exh. 1, Malone Depo., 81:11 – 82:3; Exh. 8, Walter-Mack Depo., 62:22 – 63:10; Exh. 3, Kenyonna Brown Depo., 8:1-16.*

17.　　Dr. Malone never told Kenyonna's mother, Tiffany Brown, about the sexually offensive comments Tyree made to Kenyonna. *Exh. 1, Malone Depo., 9:7 – 10:10, 83:20-23.*

18.　　Tyree's comments to Kenyonna were derogatory, inappropriate and disrespectful comments with sexual connotations. *Exh. 8, Walter-Mack Depo., 28:6 – 29:9, 152:22 – 153:5; Exh. 1, Malone Depo., 80:5-21.*

19.　　In referring to Kenyonna as a "hoochie" and a "hoe," and remarking that her blouse was too tight, Tyree failed to preserve the safety and failed to protect the health and general welfare of Kenyonna Brown. *Exh. 8, Walter-Mack Depo., 91:14 – 92:3.*

**2002 Sexual Abuse Hotline call**

20.　　Soon after the allegations that Tyree verbally sexually abused Kenyonna came to light, Dr. Malone, at the direction of the "school legal department," contacted the Missouri Division of Family Services (DFS) to make a hotline report concerning Tyree's behavior toward Kenyonna. *Exh. 14, Malone Depo. Exh. 10, DFS Child Abuse/Neglect Investigation Summary, p. KCMSD 378; Exh. 1, Malone Depo., 104:12-19, 107:1-10, 112:9-13.*

---

1  Maurice Watson, in his closing remarks to the School Board at Tyree's termination hearing, said: "Mr. Tyree called her a hoochie, a hoe, not just in front of the student, not just in private, but when other adults were present and other adults complained about it. They were so disturbed, so disgusted that he would treat a student in that way, they complained to the principal and Mr. Tyree was reprimanded for that." *Exh. 13, Closing Remarks of Maurice Watson at*

6

21.     The purpose of making a hotline report to DFS is to alert the DFS when it is believed or suspected that a child is in an unsafe and/or dangerous situation including physical abuse or sexual abuse.[2] *Exh. 1, Malone Depo., 106:19-23, 107:19 – 108:2, 146:18 – 147:6; Exh. 8, Walter-Mack Depo., 74:5-15, 76:4-14, 146:19 – 147:2.*

22.     Dr. Malone called the DFS hotline in 2002 because she believed that Tyree emotionally abused Kenyonna and she had concerns about Tyree's verbal harassment of a sexual nature.  *Exh. 1, Malone Depo., 72:10-23, 130:1-6.* Even if the school legal department had not told her to call the hotline, she would have done so anyway.  *Id., 105:20-24.*

**Additional 2002 complaints about Tyree's sexual harassment**

23.     In 2002, the school district had actual knowledge that Joseph Tyree sexually harassed a number of teachers as well.

### Miller complaint

24.     On or about March 15, 2002, Tyree engaged in "offensive and inappropriate" behavior toward a female cafeteria worker, Ms. Miller.  Tyree's belligerent and inappropriate behavior occurred in the presence of students.  *Exh. 1, Malone Depo., 29:18 – 31:18; Exh. 15, Malone Depo. Exhibit 6.*

25.     Dr. Malone (f/k/a Dr. Biggins) had actual knowledge about the complaint that Tyree engaged in offensive and inappropriate conduct toward Ms. Miller in the presence of students.  *Id.*

### Dean complaints

26.     On July 10, 2002, Tyree loudly asked Alethea Dean, a young female who worked at Delano School through the Full Employment Counsel, how big her breasts were.  Dean ignored him

---

*the Termination Hearing in the Matter of Joseph C. Tyree, pp. KCMSD 260-261.*

and Tyree started laughing. Tyree asked her the question again, again in a loud voice, and a paraprofessional who heard him utter that offensive comment, Theris Sanders, told Tyree to "shut up." Tyree persisted and asked Dean what size bra she wore. *Exh. 10, Walter-Mack Depo. Exh. 53, pp. KCMSD 2221 – 2222.*

27.    On July 24, 2002, Dean submitted a Sexual Harassment Report Form alleging sexual harassment against Tyree. *Exh. 12, Malone Depo. Exh. 8, Alethea Dean Sexual Harassment Form, p. KCMSD 510.*

28.    The next day Theris Sanders also submitted a Sexual Harassment Report Form based on Tyree's sexually harassing comments to Alethea Dean. *Exh. 12, Malone Depo. Exh. 8, Theris Sanders Sexual Harassment Report Form, p. KCMSD 509.*

29.    June LaMothe, a school counselor who initially reported the Dean complaint to Dr. Malone, told an attorney for the School District, prior to August 12, 2002, that Tyree was "overbearing, intimidating, threatening, loud and boisterous around women and students." Lamothe also reported that "[s]he is afraid to be alone with him and intentionally avoids him." *Exh. 10, Walter-Mack Depo. Exh. 53, p. KCMSD 2222; Exh. 9, Malone Depo. Exh. 7, July 24, 2002 Memo from JP LaMothe to Dr. Biggins, p. KCMSD 678A; Exh. 1, Malone Depo., 36:18 – 41:15.*

**Dalton complaints**

30.    Sometime during Spring 2002, Tyree told Karen Dalton, a paraprofessional employed by the School District at Delano School, how "sexy" she looked in her sandals and told her he "wanted to take her back in his room and have sex with her." Dalton told this to both Dr. Malone and defendants' attorney sometime prior to August 12, 2002. *Exh. 10, Walter-Mack Depo. Exh. 53,*

---

2  A reasonable juror could conclude that Malone made the DFS hotline call because she believed Tyree sexually abused

*KCMSD 2223; Exh. 9, Malone Depo. Exh. 7, p. KCMSD 683A; Exh. 1-, Malone Depo., 44:1-20, 48:3-15*

31.     On July 16, 2002, as Dalton was coming out of the school cafeteria with her students Tyree grabbed her arm and told another teacher, in the presence of at least 12 of Dalton's students, "I know what she needs, spank that ass." *Exh. 9, Malone Depo. Exh. 7, pp. KCMSD 683A-684A; Exh. 10, Walter-Mack Depo. Exh. 53, p. KCMSD 2223; Exh. 1, Malone Depo., 42:17 – 43:25, 54:23 – 56:23.*

32.     Dalton complained to Malone that same day that Tyree "made inappropriate statements." On July 24, 2002, Dalton submitted a Sexual Harassment Report Form based on this complaint. *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 680; Exh. 12, Malone Depo. Exh. 8, Karen Dalton Sexual Harassment Report Form, p. KCMSD 512.* Dalton later told Dr. Malone that Tyree had made sexual advances and offensive comments to her. *Exh. 10, Walter-Mack Depo. Exh. 53, p. KCMSD 2223.*

**School District investigates 2002 complaints and determines that Joseph Tyree should be removed from Delano School**

33.     After the complaints about Tyree's actions toward Kenyonna and the female staff, the School District investigated Tyree. Tonia Gilbert, Staff Attorney for the School District, led the investigation with assistance from Walter-Mack and Maurice Watson. *Exh. 8, Walter-Mack Depo., 39:24 – 40:2, 65:16-17, 136:5-18; Exh. 4, School District's and Dr. Malone's Answer to Interrogatory Number 4.*

34.     Tonia Gilbert concluded on September 27, 2002 in an investigative report that, "Clearly Mr. Tyree's comments toward Althea *(sic)* Dean and Keyonna *(sic)* Brown were

---

Kenyonna.

9

inappropriate and offensive," and that "Mr. Tyree definitely engaged in inappropriate and offensive behavior, which could be construed, as sexual harassment." *Exh. 16, Walter-Mack Depo. Exh. 52, Sept. 27, 2002 Report from Tonia Gilbert to Kathy Walter-Mack, p. KCMSD 2217.* Kathy Walter-Mack, the School District's General Counsel, confirmed that Tyree's behavior violated the School District's harassment policy. *Exh. 8, Walter-Mack Depo., 40:3-6, 155:11-19.*

35.    Tonia Gilbert recommended that Tyree "should receive a letter of reprimand, sexual harassment training and **an involuntary transfer"** to another school within the District. *Exh. 16, Walter-Mack Depo. Exh. 52, p. KCMSD 2214 (emphasis added).*

36.    In a letter dated October 18, 2002, the School District formally reprimanded Tyree because he violated the School District's harassment policies in that "there [was] substantial evidence that [he] failed to meet [his] responsibilities as a teacher and that [he] acted improperly in the workplace." The letter also directed Tyree to complete sexual harassment training. *Exh. 17, Malone Depo. Exh. 15, Oct. 18, 2002 Letter to Joseph Tyree; Exh. 8 Walter-Mack Depo., 94:1-20.*

**School District allows Tyree to resume teaching duties at Delano School**

37.    On October 22, 2002, prior to Tyree completing the mandated sexual harassment training, the School District assigned Tyree to once again teach at the Delano School, and required him to report to the school on October 22, 2002. *Exh. 18, Walter-Mack Depo. Exh. 26.*

38.    The decision to place Tyree back at Delano School at that time was contrary to Tonia Gilbert's recommendation to transfer Tyree to a different school and contrary to Dr. Malone's preference that Tyree not return to Delano School, and was made without ever interviewing Tyree concerning the serious sexual harassment allegations made against him. *Exh. 8, Walter-Mack Depo., 43:19-21, 121:22 – 122:2,123:5 – 125:9, 125:24 – 126:4; Exh. 1, Malone Depo., 147:7-16.*

10

39.    Tyree did not receive his mandated, one-hour sexual harassment training from New Directions Behavioral Health until November 26, 2002, over one month after he had resumed teaching duties at Delano School.  *Exh. 19, Malone Depo. Exh. 18, New Directions Behavioral Health Harassment Education report for Joseph Tyree; Exh. 18, Walter-Mack Depo. Exh. 26.*

40.    Just months after the School District determined that Tyree sexually harassed Kenyonna, the School District enrolled her in Tyree's industrial technology class.  This was done even though Dr. Malone had the power to change Kenyonna's schedule and Kenyonna had other educational options available to her at the time.  *Exh. 1, Malone Depo., 67:20 – 68:7, 69:14 – 70:1, 70:25 – 71:8; Exh. 8, Walter-Mack Depo., 102:14 – 103:2, 103:8-13.*

**Tyree sexually abuses Kenyonna Brown again in 2003**

41.    Joseph Tyree sexually abused Kenyonna more than once in 2003.  The assaults occurred at Delano School in Tyree's office in the back of his classroom when no one else was present.  *Exh. 2, Tiffany Brown Depo., 96:8 – 97:21; Exh. 3, Kenyonna Brown depo., 9:1-3, 9:23 – 10:9, 10:14-17, 10:21-24, 25:4-8.*

**School District Discrimination and Sexual Harassment Policy**

42.    The Discrimination and Sexual Harassment Policy in effect in 2002-2003 regarding student complaints states that "[a]ny complaint of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature, as well as any sexual assault or act of sexual violence, shall be considered a complaint of sexual harassment and investigated according to this policy and procedure."  The school's principal, in this case Dr. Malone, "is responsible for promptly and equitably investigating complaints of discrimination and sexual harassment."  *Exh. 5, Malone Depo. Exh. 20, Discrimination and Sexual Harassment Policy, pp. KCMSD 1604-1606; Exh. 8,*

11

*Walter-Mack Depo., 100:8-14.*

43.     The principal is mandated by this policy to, among other things, inform the complainant's parents of the complaint and mail them a copy of <u>Your Rights as a Complainant</u> within one working day of the complaint. *Exh. 5, Malone Depo. Exh. 20, p. KCMSD 1606.* Dr. Malone never notified Kenyonna's mother, Tiffany Brown, that several teachers complained that Joseph Tyree sexually harassed her daughter. *Exh. 1, Malone Depo., 9:7 – 10:10, 83:20-23.*

44.     After the School District determined that Tyree sexually harassed Kenyonna and others, the School District had an obligation, mandated by its Discrimination and Sexual Harassment Policy, to take immediate steps to prevent the sexual harassment from occurring again. *Exh. 5, Malone Depo. Exh. 20, p. KCMSD 1607.* Under the policy such steps may include:

    a.     Determining that the parties need to be separated to avoid future contact with each other, which may include changing classroom assignments or class schedules of the accused;

    b.     Advising the individuals accused of sexually harassing or discriminating against the complainant that he/she is to have no further contact with the complaint and that any further contact will result in further discipline being taken by the school district;

    c.     Requesting that the appropriate entity make changes in any applicable school rules or policies; and,

    d.     Any other steps that are deemed necessary up to and including a recommendation of expulsion or termination (if applicable).

*Id., at KCMSD 1607-1608.*

**School District could have transferred Tyree or separated him from Ms. Brown**

45.     After determining that Tyree sexually harassed Kenyonna in July 2002, the School District could have transferred Tyree to another school within the District, per Tonia Gilbert's recommendation and Dr. Malone's wishes. Transferring a teacher under these circumstances is a

12

useful disciplinary option. In fact, Walter-Mack, the person who ultimately decided what discipline was appropriate for Tyree, actually considered transferring him, but decided not to use that disciplinary tool. *Exh. 8, Walter-Mack Depo., 52:9-13, 53:12-15, 58:12-25, 60:3-13, 184:16-20*

46. On several occasions in circumstances similar to the complaints involving Tyree and Kenyonna, the School District exercised the disciplinary option of transferring a teacher to a different school within the District following a complaint by a student. *Id., at 190:12 – 191:13 (teacher transferred following complaints of unwelcomed sexual or romantic advances), 202:1-21 (teacher transferred after he was accused of disclosing intimate details of a relationship he had with a 16-year-old and telling a female student that he wanted to have a sexual relationship with her), 202:22 – 203:18 (custodian transferred after making unwelcome advances to a coworker), 203:19 – 205:13 (teacher transferred following a complaint that he grabbed a female student and pushed her out of a room), 207:15-25 (teacher transferred after being accused of looking at girls' bottoms, following girls into the bathroom, and calling a female student at her home).*[3]

47. After determining that Tyree sexually harassed Kenyonna in July 2002, the School District could have, pursuant to the Discrimination and Sexual Harassment Policy governing student complaints, separated Tyree and Kenyonna to avoid future contact with each other by ensuring that Kenyonna would not later be placed in Tyree's industrial technology class. Walter-Mack agrees that, under the right circumstances, separating a student and a teacher accused of sexually harassing the student would be a "good thing." *Id., at 102:9-25, 178:19 – 179:5; Exh. 1, Malone Depo., 142:23 – 143:12.* Tiffany Brown, Kenyonna's mother, agreed that Dr. Malone should have prevented her daughter from later being enrolled in Tyree's class. *Exh. 2, Tiffany Brown Depo.,*

---

3 The School District also terminated the employment of a teacher who was accused of grabbing a female student's

13

*120:9-20.*

48.     After determining that Tyree sexually harassed Kenyonna in July 2002, the School District could have, pursuant to the Discrimination and Sexual Harassment Policy governing student complaints, advised Tyree that he was to have no further contact with Kenyonna.  No one from the School District so advised him.  *Exh. 1, Malone Depo., 145:6-17; Exh. 8, Walter-Mack Depo., 103:3-7.*

## III.     PLAINTIFF'S RESPONSE TO SCHOOL DISTRICT'S AND DR. MALONE'S STATEMENT OF ALLEGED UNCONTROVERTED FACTS

The School District's and Dr. Malone's own statement of facts demonstrates that summary judgment is not appropriate in this case.  Many of the School District's and Dr. Malone's factual allegations are immaterial and ignore important evidence that Dr. Malone and the School District had actual knowledge or notice that Kenyonna Brown's teacher, Joseph Tyree, specifically made inappropriate and sexually suggestive comments directed to Kenyonna that rose to a level such that the School District's own legal counsel stated that "Mr. Tyree definitely engaged in inappropriate and offensive behavior, which could be construed as sexual harassment."  The undisputed facts show that the School District specifically ignored its own policies, Dr. Malone's desire to remove Tyree permanently from Delano School, and legal counsel's advice and recommendation to transfer Tyree to another school within the District after the sexual harassment of Kenyonna came to light.  Evidence also shows that the School District placed Kenyonna back in Tyree's classroom only months later, and that Tyree sexually assaulted Kenyonna more than once after that.

The material issues of fact in this case are disputed or support Ms. Brown.  The following is Ms. Brown's response to the School District's statement of alleged uncontroverted facts:

---

buttocks and rubbing her leg and back.  *Exh. 8, Walter-Mack Depo., 206:1 – 207:14.*

1.     Uncontroverted.

2.     Uncontroverted.

3.     Uncontroverted.

4.     Uncontroverted.

5.     Uncontroverted.

6.     Uncontroverted that on July 24, 2002, June LaMothe, the counselor at Delano School, reported to Dr. Malone that Alethea Dean complained to her about Tyree making sexually offensive comments to her on July 10, 2002.  The School District learned that on July 10, 2002, Tyree loudly asked Dean, a young female who worked at Delano School through the Full Employment Counsel, how big her breasts were.  Dean ignored him and Tyree started laughing.  Tyree asked her the question again in a loud voice, and a paraprofessional who heard him utter that offensive comment, Theris Sanders, told Tyree to "shut up."  Tyree persisted and asked Dean what size bra she wore. *Exh. 10, Walter-Mack Depo. Exh. 53, pp. KCMSD 2221 – 2222.*

7.     Uncontroverted.  Also, on July 24, 2002 Dean submitted a formal complaint of sexual harassment against Tyree. *Exh. 12, Malone Depo. Exh. 8, Alethea Dean Sexual Harassment Form, p. KCMSD 510.*

8.     Uncontroverted.

9.     Uncontroverted that Dr. Malone received a statement from Ms. Dalton, but controverted as to the implication that this was with only complaint about Tyree's behavior made by Dalton.  Sometime during Spring 2002, Tyree told Dalton how "sexy" she looked in her sandals and told her he "wanted to take her back in his room and have sex with her."  Dalton told this to both Dr. Malone and defendants' attorney sometime prior to August 12, 2002. *Exh. 10, Walter-Mack Depo.*

15

*Exh. 53, p. KCMSD 2223; Exh. 9, Malone Depo. Exh. 7, p. KCMSD 683A; Exh. 1, Malone Depo., 44:1-20, 48:3-15.* Also, Dalton reported to Malone that Ms. White and Ms. Coleman "had issues with Mr. Tyree's behavior toward a student." *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 688; Exh. 1, Malone Depo., 122:5-9.*

10. Uncontroverted that on July 16, 2002, as Dalton was coming out of the school cafeteria with her students Tyree grabbed her arm and told another teacher, in the presence of at least 12 of Dalton's students, "I know what she needs, spank that ass." Dalton told him to let her go and she escorted the students back to her classroom. *Exh. 9, Malone Depo. Exh. 7, pp. KCMSD 683A-684A; Exh. 10, Walter-Mack Depo. Exh. 53, p. KCMSD 2223; Exh. 1, Malone Depo., 42:17 – 43:25, 54:23 – 56:23.* Dalton complained to Malone that same day that Tyree "made inappropriate statements." Malone asked Dalton if she "wanted to file a report." Dalton said "no," but eight days later she submitted a Sexual Harassment Report Form based on this complaint. *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 680; Exh. 12, Malone Depo. Exh. 8, Karen Dalton Sexual Harassment Report Form, p. KCMSD 512.*

11. Uncontroverted.

12. Uncontroverted that on July 25, 2002, Carolyn White told Dr. Malone that on July 22, 2002 she observed Tyree referring to Kenyonna as a "hooch, etc.," in a very loud manner. *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 685.* White submitted a Sexual Harassment Report Form based on that conduct and behavior. In her report White wrote that, "I heard him calling Keyanna *(sic)* a "hoe." He stated "and tell your momma that you're a hoe too." He kept repeating that over and over. It made me uncomfortable." *Exh. 12, Malone Depo. Exh. 8, Ms. White Sexual Harassment Report Form, p. KCMSD 513; Exh. 1, Malone Depo., 56:19 – 61:8.* Also, sometime after July 25,

16

2002 and before August 12, 2002, defendants' attorney interviewed White concerning Tyree's sexually offensive comments directed at Kenyonna Brown. Defendants' attorney reported that White told him the following:

> Ms. White did personally observe and hear Tyree calling Keyonna *(sic)* Brown a "hooch." Her recollection is that he made the comment repeatedly and in a loud voice. While the comment was directed specifically to the student, he said it in the presence of all students. Her recollection is that the incident occurred outside the cafeteria while the student was in the hall coming from a classroom. The incident occurred on or about July 22. When Tyree made the comment to the student, the student turned around, and he proceeded to challenge her to "tell your mama I'm calling you a hooch." Ms. Brown *(sic)* observed that Tyree regularly engaged in such teasing and harassing behavior.

*Exh. 10, Walter-Mack Depo. Exh. 53, pp. KCMSD 2224-2225.*

13. Uncontroverted.

14. Uncontroverted that on July 25, 2002, Cynthia Kendrick reported to Dr. Malone that she heard Tyree make inappropriate comments directed at Kenyonna Brown. Specifically, Kendrick told Dr. Malone that Tyree "poked me in my arm and said, "You see that, that's a hooch,"" referring to Ms. Brown, that he made the comments "in a loud voice," and that he "kept talking about her." Kendrick also told Malone that Tyree told Ms. Brown to "go tell your mama" that he called her a "hoochie." Kendrick also stated that Ms. Brown "didn't look too happy" about being called an inappropriate name and that Ms. Brown "looked surprised." *Id., at KCMSD 2224, Exh. 9, Malone Depo. Exh. 7, p. KCMSD 684A; Exh. 11, Malone Depo. Exh. 11, p. KCMSD 690; Exh. 1, Malone Depo., 45:13 – 46:20, 123:14 – 124:6.* Also, sometime after July 25, 2002 and before August 12, 2002, Kendrick told defendants' lawyers:

> She heard Tyree yelling that a student, Keyanna *(sic)* Brown, was dressed like a "hoochie." His comments were made in the presence of students. The student looked surprised when he made the comment. Tyree proceeded to tell the student that she needed to tell her "mama" that he said she was dressed like a "hoochie" and

that she should not dress that way.  He ordered the student to keep her legs under the desk to hide her body.  On another occasion, as the students were preparing to go on a field trip, Tyree demanded that the student stand up so that he could see what she was wearing that day.  He said to the student:  "Stand up, hooch."

*Exh. 10, Walter-Mack Depo. Exh. 53, p. KCMSD 2224.*

15.    Uncontroverted.  However, plaintiff specifically denies that her manner of dress gave Tyree license to sexually harass her or has any relevance to any issue in this case.  Both Dr. Malone and Ms. Walter-Mack admit as much.  Also, Tyree never complained to Malone about Kenyonna's attire.  *Exh. 1, Malone Depo., 64:16-20, 85:3-9, 85:14 – 86:6, 87:9-14; Exh. 8, Walter-Mack Depo., 33:8-12, 96:8-14, 212:9-17.*

16.    Uncontroverted.

17.    Uncontroverted.

18.    Uncontroverted.

19.    Uncontroverted.  However, it should be noted that Tyree was welcomed back to Delano School before he completed his one-hour sexual harassment and sensitivity counseling session.  *Exh. 19, Malone Depo. Exh. 18; Exh. 18, Walter-Mack Depo. Exh. 26.*

20.    Uncontroverted that the decision as to the discipline to impose on Tyree and the decision to place Tyree back at Delano School was made by Kathy Walter-Mack, a person with authority to do so, without regard to Tonia Gilbert's recommendation to transfer Tyree to a different school and Dr. Malone's preference that Tyree not return to Delano School, and without ever interviewing Tyree concerning the serious sexual harassment allegations made against him.  *Exh. 8, Walter-Mack Depo., 43:19-21, 121:22 – 122:2,123:5 – 125:9, 125:24 – 126:4; Exh. 1, Malone Depo., 147:7-16.*

18

21.     Uncontroverted, but plaintiff specifically denies that Tiffany Brown's testimony as to the foreseeability of the sexual assault has any relevance to any matter discussed herein.

22.     Uncontroverted, but plaintiff specifically denies that Tiffany Brown's testimony as to the appropriateness of any discipline imposed on Tyree for sexually harassing her daughter has any relevance to any matter discussed herein, especially given that Tiffany Brown did not even know Tyree sexually harassed her daughter in 2002 until after her daughter reported being sexually abused by Tyree in 2003. *Exh. 2, Tiffany Brown Depo., 77:5-10, 106:15 – 108:17.*

23.     Uncontroverted, but Kenyonna knew that Tyree's comments were offensive and hurt her feelings. *Exh. 3, Kenyonna Brown Depo., 8:1-22.*

24.     Uncontroverted.

25.     Uncontroverted.

26.     Uncontroverted.

27.     Uncontroverted.

28.     Uncontroverted.

29.     Uncontroverted.

30.     Controverted.  On July 25, 2002, Kenyonna told Dr. Malone about Tyree's sexually offensive comments directed at her.  She told Dr. Malone that Tyree was calling her names, that he said she was a "hoochie."    The School District and Dr. Malone knew that Kenyonna was embarrassed and offended by the comments. *Exh. 11, Malone Depo. Exh. 11, p. KCMSD 691; Exh. 1, Malone Depo., 81:11 – 82:3; Exh. 8, Walter-Mack Depo., 62:22 – 63:10; Exh. 3, Kenyonna Brown Depo., 8:1-16.*

19

31.     Controverted.  Tiffany Brown testified that soon after Kenyonna started going to school at Delano, well before Tyree sexually harassed her in the Summer of 2002, she asked Kenyonna how she liked school at Delano, because Kenyonna had been having problems at her previous school, Central.  Kenyonna responded that she "liked it, in fact, she loved Delano."  Tiffany Brown never asked Kenyonna that question again, and Kenyonna never volunteered that information again.  *Exh. 2, Tiffany Brown Depo., 80:5 – 81:3.*

32.     Uncontroverted.

## IV.     STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  ***Fed.R.Civ.P. 56(c)***.  When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences."  ***Comstock v. Consumers Markets, Inc.***, 953 F.Supp. 1096, 1099 (W.D.Mo. 1996).  At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).  Summary judgment will not lie if a reasonable fact finder could return a verdict for the nonmoving party or if reasonable minds could differ as to the import of the evidence.  ***Id.***

20

## VI.    ARGUMENT

The School District and Dr. Malone knew that Tyree sexually harassed Kenyonna Brown in the Summer of 2002.  They could have, indeed should have, taken the simple and available steps to prevent any further contact between Tyree and Kenyonna.  The School District's own attorney recommended that Tyree be transferred to another school and Dr. Malone herself did not want Tyree back in her school. The Court should let a jury decide whether the School District and/or Dr. Malone failed to protect the safety and welfare of Kenyonna Brown.

The evidence in the record demonstrates that there are genuine issues of material fact on each factual issue plaintiff is required to prove.  The School District and Dr. Malone are not entitled to Summary Judgment.

### A.    <u>There are Genuine Issues of Material Fact on Plaintiff's Title IX Claim.</u>

Title IX provides that "[n]o person …. shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. ***20 U.S.C. § 1681(a).  Franklin v. Gwinnett County Public Schools,*** 503 U.S. 60, 112 S.Ct. 1028 (1992) established that a school district can be held liable in damages in Title IX cases involving a teacher's sexual harassment of a student.  ***Gebser v. Lago Vista Independent School District,*** 524 U.S. 274, 281, 118 S.Ct. 1989, 1995 (1998).  In order to state a claim under Title IX in the context of sexual harassment against a student by a teacher, as in this case, a plaintiff must show:  1) an official who at a minimum has authority to address the alleged discrimination or harassment and to institute corrective measures on the school's behalf has actual knowledge or notice of discrimination or harassment; and 2) the official with such notice was deliberately indifferent to the discrimination or harassment. ***Id.*** at 284.

21

There is no dispute that Kathy Walter-Mack, and Dr. Malone to a certain extent, were School District officials entrusted with authority to address discrimination and to institute corrective measures on the School District's behalf. There also is no dispute that Walter-Mack, and the School District, knew that Tyree engaged in offensive sexually harassing behavior toward Kenyonna Brown and several female teachers in 2002. The School District makes two arguments supporting its claim that it is not liable under Title IX: 1) It did not have sufficient knowledge or notice of alleged discrimination; and 2) even if it did have the requisite knowledge, its response to the discrimination was not deliberately indifferent. There are factual issues in the record from which a reasonable jury could find for the plaintiff on these issues. The School District's motion must be denied.

### 1. The School District Had Knowledge or Notice of Tyree's Prior Discriminatory Acts and Conduct

The first prong of Title IX liability requires a plaintiff to show that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the [school's] programs." *P.H. v. School Dist. of Kansas City, Missouri,* 265 F.3d 653, 661 (8th Cir. 2001), *quoting* **Gebser,** 524 U.S. at 290. The School District admits that it had actual knowledge of Tyree's sexual misconduct toward Kenyonna Brown, Alethea Dean and Karen Dalton in 2002. *See School District's Suggestions in Support of Motion for Summary Judgment, p. 19 ("The School District does not deny that it was aware of the July 2002 report of misconduct involving Tyree ... ").* At least five teachers or other school personnel made eight or more complaints about Tyree's sexual harassment of teachers, and three or more teachers, as well as Kenyonna Brown, made complaints about Tyree's inappropriate and offensive conduct toward Kenyonna. *See Plaintiff's Material Facts Precluding Summary Judgment ("Pltf. Facts"), section II, paragraphs 8-19, 24-32.*

22

Kathy Walter-Mack, the School District official entrusted with authority to address discrimination and to institute corrective measures on the School District's behalf, had actual knowledge of Tyree's sexual harassment and sexual abuse of Kenyonna Brown in 2002. Dr. Malone had actual knowledge of Tyree's sexual abuse of Kenyonna and called the DFS hotline to report this sexual abuse.[4] It is undisputed that the School District required Tyree to attend sexual harassment counseling. A reasonable jury may conclude that these facts are sufficient to demonstrate that the School District had actual notice that Tyree presented a risk of sexually inappropriate conduct sufficient to require an adequate response to the complaints.

The School District incorrectly asks the Court to impose a notice standard in Title IX cases so high that only a prior report of an actual physical sexual assault perpetrated on the same victim in this case would trigger the School District's liability. That is not the standard contemplated by Title IX, *Gebser*, nor numerous cases that have analyzed the notice standard.

The School District cites *P.H.* to support its claim that it did not have "sufficient actual notice" to impose Title IX liability. It is telling that *P.H.* is the authority upon which the School District principally relies for its notice argument because the factual dissimilarities between *P.H.* and the present case are striking. The plaintiff in *P.H.* attempted to infer notice of sexual contact by a teacher primarily by pointing to an undocumented, unsubstantiated 1978 allegation of sexual misconduct between the teacher and a male student at another school. The court found that occurrence – which allegedly occurred 20 years earlier -- too remote in time to infer notice. *Id.* at 662. The facts here, in contrast to *P.H.*, clearly show notice, not by inference or reference to an old,

---

4  Because *R.S.Mo. § 210.115* requires reports of possible physical abuse, neglect or sexual abuse (*Exh. 6, Walter-Mack Depo. Exh. 33; Exh. 8, Walter-Mack Depo., 74:5-15, 76:4-14, 146:19 – 147:2; Exh. 1, Malone Depo., 106:19-23, 107:19 – 108:2*), a reasonable jury could infer that Dr. Malone was calling to report sexual abuse. Clearly, she was not calling to report physical abuse or neglect of Kenyonna Brown in 2002.

unsubstantiated allegation of misconduct of another student unrelated to the present action, but by an actual, substantiated complaint of sexual abuse by the very same victim only months before she was abused again.

Like the dissimilar facts in **P.H.,** the facts in **Doe v. Gooden**, another case referenced by defendants, are distinguishable from the present situation. In that case, a teacher was accused of yelling and screaming at students and using foul language. **Doe v. Gooden,** 214 F.3d 952, 955 (8th Cir. 2000). The court said that this behavior did not give defendant sufficient notice of possible sexual abuse of another student. **Id.** That is totally unlike the sexually offensive names Tyree called Kenyonna and the other sexual harassment he perpetrated on the teachers which gave rise to the School District's notice in this case. **Gooden** is not particularly instructive here.

For purposes of a Title IX claim alleging sexual harassment of a student by a teacher, an educational institution has "actual notice," or actual knowledge, of the discrimination if an appropriate person at the institution has knowledge of facts sufficiently indicating a substantial danger to a student, such that the institution can reasonably be said to be aware of the danger. **Bostic v. Smyrna School Dist.,** 418 F.3d 355 (3rd Cir. 2005). Without a doubt the School District knew and appreciated the danger Tyree posed to Kenyonna Brown. Why else would they have called the DFS hotline for sexual abuse in 2002?

Other federal courts have held that a prior complaint made by the same student may provide actual notice sufficient to impose institutional liability for sexual harassment under Title IX, even if the conduct complained of was not identical to the conduct plaintiff alleges should have been remedied. For example, in **Doe A. v. Green** a student first confided in her health teacher that she

24

was concerned about the nature of the attention paid to her by the assistant soccer coach. The health teacher then reported the student's concerns to the principal. The court found that this report was deemed sufficient actual notice of harassment or abuse. ***Doe A. v. Green,*** 298 F. Supp. 2d 1025, 1032 -33 (D. Nev. 2004)[5], *accord **Morlock v. West Central Education District,*** 46 F. Supp. 2d 892 (D. Minn. 1999) (defendants could not dispute that officials in positions of authority had actual notice that the misconduct plaintiff complained of was occurring when evidence suggested that plaintiff complained to two teachers with authority to take steps to prevent sexual harassment); *see also, **Hart v. Paint Valley Local School Dist.,*** 2002 WL 31951264 (S.D. Ohio 2002) ("While the complaints may be unsubstantiated by corroborating evidence and denied by the allegedly offending teacher, whether such complaints put the school district on notice of a substantial risk to students posed by a teacher is usually a question for the jury.").

Similarly, in ***Gordon v. Ottumwa Communtiy School Dist.,*** 115 F. Supp. 2d 1077 (S.D. Iowa 2000), the court concluded that a single credible report to a grade school principal about an employee's inappropriate behavior could provide enough evidence for a reasonable trier of fact to determine that the school principal had actual notice that the employee posed a substantial risk of sexual abuse to the children at the school. In analyzing the notice standard the court held that actual notice "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. At some point …, a supervisory school official knows … that a school employee is a substantial risk to sexually abuse children." ***Gordon***, 115 F. Supp. 2d at 1082. *See also, **Doe v. School Administrative Dist. No. 19,*** 66 F. Supp. 2d 57 (D.

---

5  ***Doe A. v. Green*** provides an instructive review of how other district courts across the county have considered the meaning of "actual notice" in the context of claims under Title IX. ***Doe A. v. Green,*** 298 F. Supp. 2d 1025, 1032-34 (D. Nev. 2004).

Me. 1999) (actual notice standard does not set the bar so high that a school district is not put on notice until it receives a credible report that student-plaintiff is target of sexual harassment).

The record in this case demonstrates the School District had actual knowledge that Tyree sexually abused and harassed the very victim in this case, Kenyonna Brown, in 2002, less than one year prior to Tyree sexually assaulting Kenyonna in the back of his classroom in the Spring and Summer 2003.  The School District has cited no cases which hold that a school district faced with these facts -- at least eight teachers or other school personnel making ten or more complaints of sexual harassment of teachers and the student currently claiming harassment – did not have actual notice of discrimination.  There is, at the very least, a factual issue as to whether the School District here had "sufficient" actual notice.  Summary judgment should be denied at this point.

>    **2.      The School District's Response to Complaints of Harassment and Abuse Displayed Deliberate Indifference.**

The School District is liable for Tyree's subsequent sexual harassment and abuse of Kenyonna Brown if its response to the prior known harassment amounted to deliberate indifference to Tyree's prior misconduct.  ***Gebser,*** 524 U.S. at 290.  If the School District either **failed to act or acted in a way which could not have reasonably been expected to remedy the violation**, then the School District is liable for what amounts to an official decision not to end the harassment or discrimination.  ***Id.*** (emphasis added).  Therefore, Title IX liability will attach if a school official with authority to respond has actual knowledge of discrimination and "fails **adequately** to respond."  ***P.H.,*** 265 F.3d at 661, *citing **Gebser,*** 524 U.S. at 290 (emphasis added).  At summary judgment, it is defendants' weighty burden to show that no factual issues exist and that they are entitled to judgment as a matter of law on these issues.  The facts in the record allow a reasonable jury to conclude that the School District was deliberately indifferent to Tyree's misconduct.

26

The School District concluded that Tyree should be removed from Delano School. The School District ignored that recommendation of its lead investigator and instead placed Kenyonna back in class with the man who sexually abused her just months before. "A claimant may demonstrate deliberate indifference by showing that a school district took only minor steps to address the harassment with the knowledge that such steps would be ineffective." *Morlock,* 46 F. Supp. 2d at 910. A reasonable jury could conclude that the School District's response was less than adequate to a known abusive situation based on these facts.

After receiving the complaints about Tyree's actions toward Kenyonna, Dr. Malone called DFS to make a hotline report. A jury could reasonably infer that she did this because she believed or suspected that Kenyonna was in an unsafe and/or dangerous situation because of the sexual and emotional abuse perpetrated upon her by Tyree. *Pltf. Facts at ¶¶ 20 – 22.* Following Dr. Malone's call to DFS, the School District, led by staff attorney Tonia Gilbert, investigated Tyree. *Id. at ¶ 33.* Following the investigation, Gilbert recommended that Tyree "should receive a letter of reprimand, sexual harassment training and an involuntary transfer" to another school within the District. *Id. at ¶ 35.*

Despite this recommendation, the School District <u>did not</u> transfer Tyree to another school. In fact, over one month prior to Tyree completing the mandated sexual harassment training, the School District assigned Tyree to once again teach at the Delano School. *Id. at ¶ 37.* The School District did not even wait to find out if the mandated harassment training would help prevent additional harassment or abuse, or wait to find out if Tyree's behavior was likely to get better, worse, or stay the same after counseling. Walter-Mack's decision to place Tyree back at Delano School at that time was contrary to Tonia Gilbert's recommendation to transfer Tyree to a different school and

27

contrary to Dr. Malone's preference that Tyree not return to Delano School. *Id. at ¶ 38.* The School District did not document its reason for ignoring Gilbert's recommendation at the time. Also, the School District admits that nothing prevented it from transferring Tyree to another school within the District; they had done so many times before under similar circumstances. *Id. at ¶ 46.* A reasonable jury could conclude that the School District's refusal to follow its own recommendation to remove Tyree from Delano School constituted deliberate indifference.

Further, the School District's Discrimination and Sexual Harassment Policy mandated the District to take steps to prevent further harassment and abuse, including separating Tyree and Kenyonna to avoid future contact with one another or advising Tyree to have no further contact with her. *Id., at ¶ 44.* The School District did neither. *Id., at ¶ 47-48.* There also is no indication in the record that the School District monitored Tyree's behavior after he attended sexual harassment counseling. They never asked Kenyonna if she wanted Tyree for a teacher again or if Tyree was treating her appropriately after she was placed in his class in Spring 2003 and again in Summer 2003. Kenyonna functions as a five- or six-year-old and a reasonable jury could conclude that the School District knew she could not be expected to report subsequent abuse as a more advanced student would. Likewise, there is no evidence that anyone with the School District asked other teachers or students about Tyree's interaction with them prior to July 2003, or that they did anything else to ensure Tyree's compliance with his "probationary" status. Couldn't someone have simply asked a few questions? In fact, Dr. Malone testified that she took a hands-off approach to Tyree after he was returned to her school, saying, "when he came back to my school, I had to treat him like any other employee. I couldn't discriminate, or make certain arrangements for him to have only this child, or this child, in his class." *Exh. 1, Malone Depo., 90:17-21.* A reasonable jury may conclude

that Dr. Malone <u>did</u> have the authority to make those arrangements and could have monitored Tyree's behavior more closely.

"Not every feeble response to a student's complaint of sexually inappropriate conduct by a teacher … will insulate a school district from liability under Title IX.  The Court must examine the 'adequacy of the response,' in light of the 'seriousness and credibility of the complaint that puts the school officials on notice.'" ***Gordon,*** 115 F. Supp. 2d at 1082-83, *quoting* ***Kinman v. Omaha Pub. Sch. Dist.,*** 171 F.3d 607, 610 (8th Cir. 1999) and ***Doe v. School Admin. Dist. No. 19,*** 66 F. Supp. 2d 57, 64 (D. Me. 1999). *Accord* ***Zamora v. North Salem Central School Dist.,*** 414 F. Supp. 2d 418 (S.D. N.Y. 2006) (even apparent efficient response of school district from time it learns teacher may have sexually harassed student does not necessarily exclude finding of prior deliberate indifference sufficient to sustain claim for damages under Title IX).  Given the apparent factual dispute concerning the adequacy of the School District's response to the complaints of Tyree's harassment, summary judgment is not appropriate.

The School District again relies on the factually dissimilar ***P.H.*** in discussing deliberate indifference.  A close review of that case, however, reveals that the court did not even reach the question of deliberate indifference because it found that the plaintiff had not proven sufficient actual notice, the first prong of Title IX liability.

Other federal courts have found a triable issue on deliberate indifference under facts more similar to this case than ***P.H.***  If an institution fails to act against known sexual harassment, or acts in a way that could not have reasonably been expected to remedy the violation, then the institution is liable under Title IX for what amounts to an official decision not to end the discrimination.  ***Doe A.,*** 298 F. Supp. 2d at 1035, *citing* ***Gebser,*** 524 U.S. at 290.  The court in ***Doe A.*** held that there was

29

sufficient evidence of such conduct on the part of the principal to at least create a genuine issue of material fact regarding the principal's knowledge and resulting conduct to preclude summary judgment. *Id.* at 1036. The evidence revealed that the principal, after learning that a student felt uncomfortable around an assistant coach, met with the student, met with the coach and counseled him to remain professional at all times, set up a meeting between the coach and the school's athletic director to further address the situation, met with plaintiff's father and told him she would "monitor the situation," and had the athletic director review with all coaches the appropriate boundaries that coaches were to keep with the student athletes and distribute a memo summarizing the meeting. *Id.* at 1028-29. The plaintiff alleged that no attempts were made thereafter to monitor the coach's behavior toward her and that the principal never followed up with her or visited with her again to see if she continued to have inappropriate interactions with the assistant coach. *Id.* at 1029. Also, it was undisputed that neither the principal nor the school district made an attempt to separate the two or prevent further contact. *Id.* The court, in denying summary judgment, could not determine whether, under these facts, the defendants' response to the complaint was clearly unreasonable. *Id.* at 1035-36. *See also, Morlock,* 46 F. Supp. 2d at 909 (assuming the truth of plaintiff's allegations that school district official with knowledge of inappropriate behavior by teacher toward student and authority to discipline made no effort to discipline teacher, counsel him, segregate him from plaintiff or report plaintiff's complaints about him, the official's response evidenced a deliberate and conscious decision to permit teacher's conduct to continue free from intervention).

Similarly here, the School District never informed Kenyonna's mother about the complaints or the outcome of the investigation, the School District did not follow up or properly monitor Tyree's conduct and behavior, the School District never asked Kenyonna whether she wanted to go

back to Tyree's classroom, and, after putting Kenyonna back into Tyree's classroom, the School District never asked her if Tyree was treating her appropriately, the School District never advised Tyree to have no further contact with Kenyonna, the School District did not separate Tyree and Kenyonna, and the School District did not transfer Tyree to another school within the District. Like the Courts in ***Doe A.*** and ***Morlock***, this Court should not decide, as a matter of law, whether the School District's response to the complaints was adequate or was deliberately indifferent to the safety and welfare of Kenyonna Brown. That decision should be left for the jury.

In determining what is meant by the standard requiring "deliberate indifference" in the Title IX context, the Court may also consider the standard as it has been described in claims brought pursuant to other federal laws, such as Section 1983. ***Gebser,*** 524 U.S. at 291. For instance, in upholding a jury verdict in favor of the plaintiff and analyzing "deliberate indifference" under the Eighth Amendment, the Court in ***Ware v. Jackson County, Missouri*** held, in part, that Jackson County's deliberate indifference to a risk of sexual misconduct by jail officers toward inmates was evidenced by the County's failure to "**discipline adequately**" officers who engaged in sexual misconduct. ***Ware v. Jackson County, Missouri,*** 150 F.3d 873 (8th Cir. 1998) (emphasis added). The Court said the following facts, by themselves, supported the jury's finding of deliberate indifference: 1) Despite supervisor's actual knowledge of officer's history of misconduct, supervisor failed to discipline officer or order any precautionary measures; 2) there was no evidence that offending officer's supervisors were instructed to increase their supervision of offending officer; 3) there was no evidence that the decision-making official followed up with officer's supervising officers. ***Id.*** *See also*, ***Sanchez v. Taggart,*** 144 F.3d 1154, 1156 (8th Cir. 1998) (holding that evidence and inferences that official knew of inmate's restrictive medical condition, that inmate had

31

confirmed physical limitations, and that official failed to inquire further are sufficient to survive summary judgment on finding of deliberate indifference); *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996) (holding that Chief of Police's awareness of two complaints of misconduct against an officer and Chief's statement that he "wouldn't doubt" that officer committed an offense were sufficient to prove Chief was deliberately indifferent to victim's rights).

A reasonable jury could conclude that the School District took only minor steps to address the harassment and abuse it knew about after completing its investigation. *See Morlock,* 46 F. Supp. at 910 ("A claimant may demonstrate deliberate indifference by showing that a school district took only minor steps to address the harassment with the knowledge that such steps would be ineffective."). A reasonable jury could conclude that, under these facts, the School District acted with deliberate indifference to the safety of Kenyonna Brown through the following failures:

- The School District never informed Kenyonna's mother about the complaints or the outcome of the investigation, in violation of the School District's sexual harassment policy;

- The School District did not follow up or properly monitor Tyree's conduct and behavior after the one-hour sexual harassment/sensitivity counseling session;

- The School District never asked Kenyonna whether she wanted to go back to Tyree's classroom;

- After putting Kenyonna back into Tyree's classroom, the School District never asked her if Tyree was treating her appropriately;

- The School District never advised Tyree to have no further contact with Kenyonna;

- The School District did not separate Tyree and Kenyonna;

- The School District did not transfer Tyree to another school within the District.

Months after the School District first had actual knowledge of Tyree's sexual harassment and sexual abuse, the School District placed him back in the Delano School classrooms unmonitored and unsupervised. It was in one of these classrooms that Joseph Tyree sexually abused Kenyonna Brown in 2003.

Finally, the question of whether the School District exercised deliberate indifference must be made by the factfinder. *Turley by Turley v. School Dist. of Kansas City, Missouri,* 713 F. Supp. 331 (W.D. Mo. 1989). In *Turley*, Judge Stevens addressed a Section 1983 claim against the School District where the plaintiffs alleged that in light of the District's knowledge of a teacher's past behavior, the District was deliberately indifferent to the pupils because of the District's alleged failure to properly supervise and monitor the teacher. Judge Stevens held that the "question of whether a municipality exercised deliberate indifference in its failure to supervise or monitor employees must be made by the factfinder." *Id.*, *citing* **City of Canton, Ohio v. Harris,** 489 U.S. 378, 109 S. Ct. 1197, 1206 (1989). Other courts have likewise found that the deliberative indifference or clearly unreasonable standard "does not lend itself well to a determination by the Court on summary judgment," and have permitted the claim to go to the jury if the plaintiff advanced some evidence in support. *Hart v. Paint Valley Local School Dist.,* 2002 WL 31951264, *9 (S.D. Ohio 2002). *See also,* **Oviatt By and Through Waugh v. Pearce,** 954 F.2d 1470, 1478 (9th Cir. 1992) ("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury."). Finally, another court noted that "**Gebser** provided the courts with little guidance as to what constitutes "deliberate indifference" in the Title IX context, leaving open the possibility that whether officials acted with deliberate indifference is simply an ultimate fact issue for juries to decide whenever actual knowledge is also present." **Morlock,** 46 F. Supp. 2d

33

at 909.

The material facts pertaining to the School District's deliberate indifference here are clearly in dispute, and plaintiff respectfully requests that the Court allow the jury to decide the issue.

**B.     There are Genuine Issues of Material Fact on Plaintiff's *42 U.S.C. §1983* Claim Against the School District**

The School District's liability under *§ 1983* arises only upon a showing that the alleged unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers … [or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels." *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691-92, 98 S. Ct. 2018 (1978).  Therefore, plaintiff may alternatively establish the School District's liability under *§ 1983* in one of two ways:  1) by showing that plaintiff's constitutional rights to be free from harassment in the school setting were violated by an official School District policy, in this case a policy of failing to appropriately discipline/supervise/monitor Tyree; or 2) by establishing the existence of a custom of failing to appropriately discipline/supervise/monitor offenders upon receiving knowledge of sexual harassment complaints.  Under either theory, there exist sufficient material facts in dispute to preclude summary judgment.

**1.     Kenyonna Brown's constitutional rights were violated by official policy.**

Kenyonna Brown may establish the School District's liability under *§ 1983* by showing that the School District had a "policy … of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue." *Jacob v. City of Osceola, Missouri,* 2006 WL 741918, *6 (W.D. Mo.), *citing Rogers v. City of Little Rock,* 152 F.3d 790, 798-99 (8th Cir. 1998).  The term "official policy" encompasses "a deliberate choice to follow a course of

34

action … made from among various alternatives by an official who has the final authority to establish governmental policy." ***Id.,*** *citing* ***Jane Doe A. v. Spec. Sch. Dist. of St. Louis County,*** 901 F.2d 642, 645 (8th Cir. 1990). A single act or decision by an official with policymaking authority in a given area could constitute "official policy" and be attributed to the government itself under certain circumstances. ***Morlock,*** 46 F. Supp. 2d at 919, *referencing* ***Pembaur v. City of Cincinnati,*** 475 U.S. 469, 106 S. Ct. 1292 (1989). In ***Pembaur***, the Supreme Court recognized that the County could be held liable under ***§ 1983*** for a single decision by a County prosecutor who authorized an unconstitutional entry into the plaintiff's clinic.

Similarly here, Kathy Walter-Mack, General Counsel for the School District, was a policy-making official who had the final authority to impose discipline on teachers for violating the District's sexual harassment policy, including Joseph Tyree. *Pltf. Facts at ¶ 45.* Walter-Mack made a deliberate choice from among many available disciplinary alternatives, including those recommended by the lead investigator of this matter and the principal of the school, as well as disciplinary directives contained in the sexual harassment policy, to only reprimand Tyree and send him to sexual harassment/sensitivity counseling after numerous complaints of unconstitutional conduct[6] were lodged against him. *Id.* A reasonable jury could conclude that this single act of deciding what discipline should be imposed on Tyree led directly to enabling Tyree to cause yet another constitutional injury upon Kenyonna Brown in 2003 and created the School District's "official policy" in this circumstance, thus exposing the District to liability.

        **2.**      **Kenyonna Brown's constitutional rights were violated by the School District's custom of failing to appropriately discipline/supervise/monitor**

---

6  "It is well settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse." *P.H.,* 265 F.3d at 658, *quoting Shrum ex rel. Kelly v. Kluck,* 249 F.3d 73, 778 (8th Cir. 2001). Also, sexual harassment by a teacher of a student in the school setting violates the student's constitutional rights under the Equal Protection Clause. *Morlock,* 46 F. Supp. 2d at 918.

**Tyree.**

The School District may be liable to Kenyonna Brown under *§ 1983* by proof of the existence of the School District's custom of failing to appropriately act upon complaints of sexual harassment, such as by failing to properly supervise, direct or control the actions of a teacher. *Turley v. School Dist. of Kansas City, Missouri,* 713 F. Supp. 331 (W.D. Mo 1989), *citing* ***Pearl v. Dobbs,*** 649 F.2d 608, 609 (8th Cir. 1981); *see also,* ***Thelma D. v. Board of Educ.,*** 934 F.2d 929, 932-33 (8th Cir. 1991). To prove this claim plaintiff must show: 1) The existence of a pattern of unconstitutional misconduct by the School District's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the School District's policymaking officials after notice to the officials of that misconduct; and 3) That Ms. Brown was injured by acts pursuant to the School District's custom, i.e., that the custom was a moving force behind the constitutional violation. *Thelma D.,* 934 F.2d at 932.

Applying the test articulated in ***Thelma D.*** to the facts of this case shows that material facts are disputed such that summary judgment is not proper.

### a.     Existence of pattern of unconstitutional misconduct

The following facts conclusively show that Tyree engaged in a continuing and persistent pattern of unconstitutional misconduct, beginning as early as March 2002:

- Ms. Miller, a cafeteria worker, complained that Tyree engaged in "offensive and inappropriate" behavior in March 2002 *(Pltf. Facts at ¶ 24)*;

- Karen Dalton complained that sometime during Spring 2002 Tyree sexually harassed her by telling her she looked "sexy" and that he "wanted to take her back in his room and have sex with her" *(Id. at ¶ 30)*;

- On July 10, 2002, Tyree offensively questioned Alethea Dean about her breasts *(Id. at ¶¶ 26-29)*;

36

- On July 16, 2002, Tyree made another sexually offensive comment to Karen Dalton, this time in the presence of students *(Id. at ¶ 31)*;

- On July 24, 2002, Karen Dalton complained to Dr. Malone that Tyree made inappropriate statements and sexually offensive comments to her *(Id. at ¶ 32)*;

- Sometime prior to August 12, 2002, school counselor June LaMothe complained that Tyree was "overbearing, intimidating, threatening, loud and boisterous around women and students" and that she was "afraid to be alone with him and intentionally avoids him" *(Id. at ¶ 29)*;

- On July 25, 2002, Cynthia Kendrick and Carolyn White complained that Tyree had called Kenyonna Brown a sexually offensive name and that they were disturbed and disgusted by his behavior *(Id. at ¶¶ 9-13, 15)*;

- On July 25, 2002, Kenyonna Brown reported being referred to in an offensive manner by Tyree.

### b.   <u>Deliberate indifference to unconstitutional misconduct</u>

Plaintiff refers the Court to the discussion of notice and deliberate indifference in the Title IX context above, in sections VI. A. 1. and 2., specifically incorporated herein by reference.

### c.   <u>Kenyonna Brown injured by acts pursuant to custom</u>

For purposes of summary judgment, there is no dispute that Tyree sexually abused Kenyonna in the Spring and Summer 2003. And, there can be no reasonable argument that she did not suffer physical, emotional and constitutional injuries because of the assaults. The question, then, is whether the school district's custom of laxness or inaction to the 2002 sexual harassment allegations in light of the existence of a continuing, persistent pattern of unconstitutional misconduct was the moving force behind the subsequent constitutional violations causing Kenyonna's injuries.

This question can be answered by again examining what Ms. Walter-Mack and Dr. Malone, two policymakers for the School District, <u>did not</u> do after receiving notice of Tyree's behavior and conduct in 2002. Had they separated Tyree and Kenyonna, had they kept Kenyonna out of Tyree's

37

classroom, had they transferred Tyree, or had they monitored Tyree or increased his supervision, Kenyonna would not have suffered the injuries she did, and we would not be here today. *See, **Ware,*** 150 F.3d 873 (8th Cir. 1998) (evidence was sufficient to support jury finding that County's failure to discipline offending officer and failure to provide close and continuing supervision of officer was moving force behind plaintiff's injuries).

Judge Stevens' opinion in ***Turley*** is particularly instructive here. In ***Turley,*** the plaintiffs alleged that the school district acted in violation of *§ 1983* because it failed to supervise, monitor, and terminate a teacher it knew had a violent disposition and had who had previously violated the district's corporal punishment policy. ***Turley,*** 713 F. Supp. 331. Plaintiffs argued that the district's knowing acquiescence of the teacher's violent disposition constituted an official custom or policy sufficient to state a claim under *§ 1983*. ***Id.*** Specifically, the plaintiffs argued that in light of the school district's knowledge of the teacher's past behavior the district's failure to supervise and monitor the teacher rose to the level of a constitutional injury. ***Id.***

Judge Stevens, in denying the school district's summary judgment motion in ***Turley*** said:

> "[U]nder ***City of Canton***, it appears as though plaintiffs could recover under their failure to supervise and monitor claims if they can show that the failure amounted to deliberate indifference by the school district to its pupils. The mere fact that the monitoring or supervision was 'negligently administered' will not be enough to prove a section 1983 violation. Sound training or supervision programs sometimes have quirks and adequately supervised or monitored employees will sometimes make mistakes but 'the fact that they do says little about … the legal basis for holding the city liable.' The question of whether a municipality exercised deliberate indifference in its failure to supervise or monitor employees must be made by the factfinder." ***Id.*** at __ (internal citations omitted).

A similar conclusion is appropriate here.

### C. There are Genuine Issues of Material Fact on Plaintiff's *42 U.S.C. §1983* Claim Against Dr. Malone

In Count III of plaintiff's Complaint, Kenyonna Brown raises allegations that Dr. Malone, as principal of Delano School and, as such, Joseph Tyree's supervisor, violated *§ 1983* because she failed to reasonably and effectively act upon her knowledge that Tyree sexually harassed Kenyonna Brown and others in 2002, and that this failure caused Kenyonna injury, namely a deprivation of her constitutional rights, including her substantive due process rights and/or privileges to bodily integrity and the liberty interest of a child in a public school to not be subjected to sexual abuse. For many of the same reasons discussed above, the Court should deny Dr. Malone's motion.

Supervisory liability can be imposed without a determination of municipal liability. Supervisory liability runs against the individual, is based on her personal responsibility for the constitutional violation and does not require any proof of official policy or custom as the "moving force" behind the conduct. *City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985), *quoting Polk County v. Dodson,* 454 U.S. 312, 326 (1981). Dr. Malone may be subject to individual liability under *§ 1983* as a supervisor for failing to adequately receive, investigate, or act upon the complaints of sexual misconduct by Tyree if: 1) She received notice of a pattern of unconstitutional acts committed by Tyree; 2) She demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) She failed to take sufficient remedial action; and 4) Such failure proximately caused Kenyonna injury. *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996). Also, Dr. Malone may be held individually liable if her failure to properly supervise and monitor Tyree caused a deprivation of constitutional rights. *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir. 1994). Under either theory genuine issues of material fact exist in this case as to whether Dr. Malone adequately acted upon the complaints about Tyree's behavior and whether she properly supervised and monitored Tyree. Therefore, summary judgment should be denied.

39

For the same reasons discussed above in connection with the School District's liability under Title IX and Section 1983, Dr. Malone is similarly liable. Dr. Malone had notice of a pattern of unconstitutional acts committed by Tyree. Dr. Malone was deliberately indifferent to the allegations against Tyree. Dr. Malone failed to take sufficient remedial action,[7] including proper supervision and monitoring. And, Dr. Malone does not dispute that the failure caused Kenyonna injury. Therefore, for all the foregoing reasons, Dr. Malone's motion should be denied.

## VII.    CONCLUSION

The School District and Dr. Malone knew that Tyree sexually harassed Kenyonna Brown in the Summer of 2002. They could have, indeed should have, taken the simple and available steps to prevent any further contact between Tyree and Kenyonna. The School District's own attorney recommended that Tyree be transferred to another school and Dr. Malone herself did not want Tyree back in her school. The Court should let a jury decide whether the School District and/or Dr. Malone failed to protect the safety and welfare of Kenyonna Brown.

The evidence in the record demonstrates that there are genuine issues of material fact on each factual issue plaintiff is required to prove. The School District and Dr. Malone are not entitled to Summary Judgment.

---

7 Contrary to Dr. Malone's assertions in her Suggestions, she <u>did</u> have the authority to discipline Tyree: "Q: Who has the authority to discipline a teacher? A: Human resources, the immediate supervisor (Dr. Malone), and myself, superintendent, obviously." *Exh. 8, Walter-Mack Depo., 53:9-11.*

40

**THORNBERRY EISCHENS & BROWN, LLC**

By:    /s/ *Joseph K. Eischens*

        Joseph K. Eischens      MO #44706
        *joe@TEBlawfirm.com*
        Stephen C. Thornberry   MO #44354
        steve@TEBlawfirm.com
        Randall W. Brown      MO #43805
        randy@TEBlawfirm.com

4550 Main Street, Suite 205
Kansas City, Missouri 64111
Telephone:    (816) 531-8383
Facsimile:     (816) 531-8385

**ATTORNEYS FOR PLAINTIFF**

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of November, 2006, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the following:

Maurice Watson
Hayley Hanson
Blackwell Sanders Peper Martin LLP
4801 Main St., Suite 1000
Kansas City, Missouri 64112
ATTORNEYS FOR DEFENDANTS
THE SCHOOL DISTRICT OF KANSAS CITY, MISSOURI and JENNIFER MALONE

I further certify that on this 21st day of November, 2006, the foregoing was mailed via first class mail to:

Joseph Tyree
3717 Cleveland Ave.
Kansas City, MO 64128

/s/ Joseph K. Eischens
**Attorney for Plaintiff**

42

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **KENYONNA BROWN** | ) | |
| **by and through her Next Friend,** | ) | |
| **TIFFANY BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 05-CV-00768-ODS** |
| | ) | |
| **THE SCHOOL DISTRICT OF** | ) | |
| **KANSAS CITY, MISSOURI,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**NOTICE OF FILING OF EXHIBITS TO PLAINTIFF'S SUGGESTIONS IN
OPPOSITION TO DEFENDANT THE SCHOOL DISTRICT OF KANSAS CITY,
MISSOURI, AND DR. JENNIFER MALONE'S MOTION FOR SUMMARY JUDGMENT**

On this 21st day of November 2006, plaintiff Kenyonna Brown filed exhibits 1 through 19 to

Plaintiff's Suggestions in Opposition to Defendants The School District Of Kansas City, Missouri,

and Dr. Jennifer Malone's Motion For Summary Judgment with the Clerk of this Court and served a

copy of this notice and these exhibits via regular US Mail to:


Maurice Watson
Hayley Hanson
Blackwell Sanders Peper Martin LLP
4801 Main St., Suite 1000
Kansas City, Missouri 64112
ATTORNEYS FOR DEFENDANTS
THE SCHOOL DISTRICT OF KANSAS CITY, MISSOURI and JENNIFER MALONE

and

Joseph Tyree
3717 Cleveland Ave.
Kansas City, MO 64128

1

**THORNBERRY EISCHENS & BROWN, LLC**


By:      /s/ *Joseph K. Eischens*

Joseph K. Eischens          MO #44706
*joe@TEBlawfirm.com*
Stephen C. Thornberry       MO #44354
steve@TEBlawfirm.com
Randall W. Brown            MO #43805
randy@TEBlawfirm.com

4550 Main Street, Suite 205
Kansas City, Missouri 64111
Telephone:      (816) 531-8383
Facsimile:      (816) 531-8385

**ATTORNEYS FOR PLAINTIFF**

2